## Schultz Piano Company, Defendant in Error, v. Leslie C. Hughes, Plaintiff in Error.

## Gen. No. 15,820.

DAMAGES—*when amount will not be reviewed.* The question of damages will not be reviewed if the sum allowed did not exceed the pecuniary loss which the evidence tended to establish.

Error to the Municipal Court of Chicago; the HON. JOHN H. HUME, Judge, presiding. Heard in this court at the October term, 1909. Affirmed. Opinion filed October 5, 1911.

CASWELL & HEALY, for plaintiff in error.

THOMAS MCENERY and MICHAEL KOCH, for defendant in error.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

This is a writ of error sued out to the Municipal Court of Chicago to reverse a judgment of that court rendered in a case of the fourth class tried by it without a jury. The judgment was for $500 against Leslie C. Hughes in favor of the Schultz Piano Company.

The statement of claim although marked "Contract" was in reality and essence an action for deceit and was practically so treated by the parties and the court.

The ground of the action was the fraudulent misrepresentations of the defendant Hughes to the plaintiff, the Piano Company, inducing the latter to enter into a transaction afterward repudiated and, so far as possible, rescinded by that Company, by which transaction it had been damaged to the extent of the judgment. Viewed in that light, we think that the question of the amount of damages, somewhat dwelt on by the

plaintiff in error in his argument here, is not very significant. Under the rule applied by the Supreme Court in a case in which the same plaintiff in error was interested—Hughes v. Lockington, 221 Ill. 571—the pecuniary loss which the evidence tended to prove was sufficient to sustain the action for the amount of damages which the plaintiff obtained judgment for.

The state of affairs which, although there was a conflict of evidence, the court below was justified in holding proved, was that the defendant Hughes obtained from the Schultz Piano Company a Lester grand piano, for which a price of $775 had been agreed on, by giving to that Company a Schaff piano valued at $275 and a note and chattel mortgage of Charles E. Holmes (the note being made to his own order by Holmes and by him alone endorsed) which had been given to him (Hughes) as collateral additional to other more valuable security which he had previously received from Holmes, for an indebtedness of $500 incurred by Holmes to him for going on a bail bond in a criminal action through which Holmes was in custody; that the chattel mortgage was of furniture which in Hughes' opinion was practically worthless, and which actually was not worth more than $200, and that notwithstanding these facts Hughes represented by express words or plain implication, in the conversations held with the manager of the Schultz Company, that he had loaned in cash the $500 which the note represented to Holmes on the sole security of the furniture described in the chattel mortgage. Moreover, although his own opinion was actually that the furniture was nearly worthless, he studiedly gave the impression that his opinion was that it represented much more value than the amount of the note. Nor, of course, did he intimate in any manner the position of the maker nor the peculiar circumstances surrounding the transaction which brought him the note.

That he realized that these representations and con-

cealments were material, and that the trade in question with the Schultz Piano Company could never have been negotiated by him without them, is shown by the fact that he reported to Holmes' lawyer, who had procured his signature to the bond, that he had told the Schultz Piano Company that he had paid $500 in cash to Holmes for the note. This he wished the lawyer to corroborate if the Schultz people asked him about it, which the lawyer refused to do.

It further appeared that very shortly afterward Hughes received on the account of Holmes, from the prior security in his hands, almost the entire amount which had been agreed on as compensation for signing the bond, and that in consequence the note and mortgage were repudiated as obligations by Holmes, and that before this suit was begun the Schultz Piano Company tendered back the note and mortgage and Schaff piano, demanding the undoing of the whole transaction, to which Hughes refused to assent.

The plaintiff in error's argument here is largely framed as though these facts raised only questions of the effect of such representations as might have been made in good faith of the value of the furniture described in the chattel mortgage and of the probability of the subsequent payment of the note and of the effect of a payment to the original holder of a chattel mortgage note after negotiation. We think they raise, rather, a question of the effect of representations made in bad faith about matters of fact, when the note was offered to the Piano Company. Even the opinion of the value of the furniture then actually entertained by Hughes was a matter of fact, which the evidence tended to prove.

We think that we have no good reason to interfere with the judgment, and it is affirmed.

*Affirmed.*